James Michael GUIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–06–00046–CR.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 17, 2006.

Decided Oct. 25, 2006.

Tim Cone, Gilmer, for appellant.

Wade Tyler Wilson, Asst. Dist. Atty., Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

### Opinion by Justice CARTER.

James Michael Guin was charged with committing the offense of graffiti. *See* TEX. PENAL CODE ANN. § 28.08 (Vernon 2003). Specifically, it was alleged that he intentionally or knowingly made markings with aerosol paint on property of the Gladewater Independent School District (Gladewater ISD) causing a loss of less than $20,000.00. As alleged, the offense was classified as a state-jail felony offense. TEX. PENAL CODE ANN. § 28.03(3) (Vernon Supp.2006). On September 29, 2005, after he was properly admonished by the trial court, Guin entered a written waiver of jury trial and consent to stipulation of testimony, and pled guilty to the offense. After a hearing was conducted, the trial court took the punishment issue under advisement and on a later date sentenced Guin to fifteen months' confinement in a state-jail facility. Guin raises four points of error on appeal: (1) the indictment is insufficient to confer jurisdiction in the trial court, (2) the trial court erred by improperly interrogating Guin, (3) the punishment assessed was unconstitutionally disproportionate to the crime, and (4) Guin received ineffective assistance of counsel. We affirm the judgment of the trial court.

### 1. Jurisdiction of the Trial Court

■ In his first point of error, Guin argues that the indictment filed in this case did not confer jurisdiction on the trial court. The basis for this argument is as follows: Section 28.08 of the Texas Penal Code states that a person commits an offense if, without the effective consent of the owner, a person intentionally or knowingly (marks or paints on tangible property of the owner with paint, marker, or engraving device). Article 1.07 of the Texas Penal Code defines an "owner" as meaning a *person* who (has title, greater right of possession or holder in due course of a negotiable instrument). TEX. PENAL CODE ANN. § 1.07 (Vernon Supp.2006). From those definitions, Guin concludes an owner must be a "natural person" and since this indictment identified the owner as the Gladewater ISD, the indictment is defective and fails to allege a fundamental element of the offense and, therefore, does not confer jurisdiction on the court.

■ Guin has failed to mention several other relevant definitions in the Texas Penal Code. It is true that subsection 35 of Article 1.07 defines owner as a person. TEX. PENAL CODE ANN. § 1.07(35). However, subsection 38 of that same article defines "person" as an individual, corporation, or association. TEX. PENAL CODE ANN. § 1.07(38). Further, in subsection 6 of the same article, one definition of "association" means a "government or government subdivision or agency." TEX. PENAL CODE ANN. § 1.07(6). In this case, the State alleged in the indictment that the owner of the property in question was the Gladewater ISD. The law is well settled in this state that an independent school district is an agency of the state. *Barr v. Bernhard,* 562 S.W.2d 844, 846 (Tex.1978); *Zuniga v. Navarro & Assoc., P.C.,* 158 S.W.3d 663, 670 (Tex.App.-Corpus Christi 2005, pet. denied). Further, in the Texas Civil Practice and Remedies Code, a governmental unit is defined, among other things, as including any "school district." TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (Vernon 2005).

The allegation that the owner of the property involved was the Gladewater ISD was sufficient to allege that element of the offense. We, therefore, overrule Guin's first point of error.

### 2. Did the trial court improperly interrogate Guin?

#### A. Procedure in the Trial Court

Guin filed an application for community supervision alleging that he had never been convicted of a felony in this or any other state. There was no negotiated plea agreement in connection with the plea of guilty. After entering the plea of guilty, Guin was questioned by his attorney concerning his remorse in committing the offense, his application for community supervision, and some of the terms and conditions of community supervision. Guin also testified that, at the time of the offense, a person named Joe Fiquette participated in painting the graffiti on the walls. The State then cross-examined Guin concerning the incident and asked, "[W]hat in the world possessed you to go write these things on the school?" In response, Guin stated, "I don't know, I had a couple drinks and a shot." Guin further responded that he did not write "white pride" on the wall and that Fiquette wrote that and some other vulgar language. The State questioned Guin concerning his actions in smoking marihuana after he was released on bond, which Guin conceded to be true. The State then asked, "[S]o where are you getting this marijuana?" Guin answered that he obtained it from some people with whom he was "hanging around." The State then questioned Guin concerning his failure to appear when his case was originally set. Guin answered that he did not realize he had court at that time.

Guin's attorney conducted redirect examination explaining that, if placed on community supervision, Guin would be prohibited from smoking marihuana and drinking intoxicating beverages. Guin stated that he would abide by those conditions of community supervision.

The trial court asked a series of questions concerning whether Guin was a member of any kind of gang or practiced racism and inquired about the tattoos on his body. The court also asked Guin, "[W]here you been getting your liquor?" Guin responded that he had been getting it from John Brown. The court further asked him if he was a member of the Aryan Nations Group and also where he was obtaining marihuana. Guin answered he obtained it from several places without giving the trial court specific names of persons.

The trial court expressed to Guin that it felt he was being evasive in his answers which was not helping him in "seeking mercy," and the trial court explained it would give Guin an opportunity to change any answers he had given. Guin replied, "Sir, I am telling the truth." Guin argues the trial court stepped beyond its required role of objectivity and neutrality. He further alleges that, since the trial court took the matter under advisement for four and a half months and ultimately sentenced Guin to a "significant period of incarceration," the harm of such interrogation is "obvious."

The State argues that any such error was not preserved as no objection was made to the court's questioning of Guin. The State further argues that the trial court's questioning was permissible.

**B. Analysis of Interrogation by the Trial Court**

Due process demands an impartial adjudicator to make a ruling based on admissible evidence in a forum with the opportunity to cross-examine and present evidence as allowed. *Williams v. State,* 89 S.W.3d 325, 328 (Tex.App.-Texarkana 2002, pet. ref'd) (citing *Rose v. State,* 752 S.W.2d 529, 536 (Tex.Crim.App.1987)). A trial court is permitted to question a witness when seeking information to clarify a point, or to get the witness to repeat something that a judge could not hear. *Williams,* 89 S.W.3d at 328. Two poten-

tial dangers arise when the trial court goes beyond this permissible questioning: (1) the trial court may convey its opinion of the case to the jury and ultimately influence the jury's decision, *id.* (citing *Morrison v. State,* 845 S.W.2d 882, 886 n. 10 (Tex.Crim.App.1992)); and (2) the trial court in its active participation may become an advocate in the adversarial process and lose the neutral and detached role required for a judge. *Williams,* 89 S.W.3d at 328 (citing *Moreno v. State,* 900 S.W.2d 357, 359–60 (Tex.App.-Texarkana 1995, no pet.)). The first potential danger cannot apply in this case since this entire proceeding was before the court during a guilty plea proceeding.

■ The second issue is whether the trial court's questions were of such a nature as to indicate the trial court abandoned its proper role as a neutral arbiter and became an advocate for the State. It is important to note that, in this proceeding, Guin had entered a plea of guilty. In such a proceeding, the court does have a role in directly addressing the defendant. The trial court is required to admonish the defendant on a number of matters. *See* TEX.CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp.2006). The court is also required to make an independent determination as to whether the defendant's plea of guilty is freely and voluntarily given and whether the defendant is mentally competent to enter such a plea. TEX.CODE CRIM. PROC. ANN. art. 26.13(b).

Further, in this case, Guin had filed an application for community supervision. The law imposes on the state courts the responsibility for determining when the imposition of sentence in certain cases shall be suspended, the conditions of community supervision, and the supervision of the defendant. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12(1) (Vernon Supp.2006). A judge may place a defendant on community supervision if the judge determines it is in the best interest of justice, the public, and the defendant after conviction or a plea of guilty. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3(a) (Vernon Supp.2006). In certain instances, if a judge determines that alcohol or drug abuse may have contributed to the commission of the offense, the judge shall direct an evaluation to determine the appropriateness of, and a course of conduct necessary for alcohol or drug rehabilitation. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 9(h). The judge shall also determine the appropriate conditions of community supervision and may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11 (Vernon Supp.2006). The court may also require as a condition of supervision that the defendant serve a term of confinement and treatment in a substance abuse facility. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 14(a) (Vernon Supp.2006).[1] In making the determinations that are required when a defendant is seeking community supervision, we believe the court has the authority to independently inquire from witnesses information relevant to those determinations.

Guin originally testified he may have been prompted to commit this offense due to "a couple of drinks and a shot." Both the State and the defense attorney asked Guin about his use of alcohol and marihuana. We believe the trial court was authorized in following up on those areas to make the determinations necessary in consider-

---

1. Due to apparent misnumbering by the Legislature, there are two sections numbered 14 in Article 42.12 of the Texas Code of Criminal Procedure. The Section 14 we cite in this opinion is titled "Substance Abuse Felony Program."

ing community supervision. However, in asking questions of the defendant, it is extremely important that the court should not abandon its neutral and detached role. Some of the questions of the court appeared to go beyond what was necessary for a determination of placement of Guin on community supervision or the terms and conditions thereof. (e.g., where you been getting your liquor?, Where does he live?, What is the name of the person where you have been getting your marihuana?, Are you a member of any gang or organization that practices racism?).

■ However, no objection was lodged to any of the questions or comments by the trial court. In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. TEX.R.APP. P. 33.1(a). Where no objection is made, remarks and conduct of the court may not be subsequently challenged unless they are fundamentally erroneous. *Moreno,* 900 S.W.2d 357 (citing *Brewer v. State,* 572 S.W.2d 719, 721 (Tex. Crim.App.1978)). Guin does not argue that the court's questions represent fundamental error. Guin cites *In re R.P.,* 37 S.W.3d 76 (Tex.App.-San Antonio 2000, no pet.), in which the trial court questioned a juvenile and, based on the juvenile's comments, refused to accept a negotiated disposition of the case. *Id.* at 79. The appellate court found that, since the trial judge was the trier of fact at the disposition hearing, the trial judge was required to determine whether the agreed disposition was suitable and his questioning of the juvenile was for clarification and was not improper. Likewise, the case of *In re S.J.,* 940 S.W.2d 332 (Tex.App.-San Antonio 1997, no pet.), cited by Guin, contains

questions of the court seeking clarification as to the testimony regarding the time the incident occurred, and such questioning was not improper. *Id.* at 338.

As we view this entire proceeding in context, we do not believe that the judge became so entangled in questioning Guin that he became an advocate and could not make an objective finding in the case. We find that the judge's questions do not constitute fundamental error and are not so egregious that Guin was denied a fair trial.

This point of error is overruled.

**3. Disproportionate Sentencing**

Guin contends his sentence is excessive, which we understand to contend that the sentence is unconstitutionally disproportionate under the Eighth Amendment to the United States Constitution which prohibits the infliction of cruel and unusual punishment to persons convicted of a crime. *See* U.S. CONST. amend. VIII.

■ Guin did not object to the sentence on the ground that it was disproportionate to the crime, or on any other ground either at the time it was imposed or by filing a motion for new trial. To preserve a complaint for appellate review, an appellant must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX.R.APP. P. 33.1(a)(1)(A); *Rhoades v. State,* 934 S.W.2d 113, 119 (Tex.Crim.App. 1996). An objection must be made in a timely manner, and a motion for new trial is an appropriate way to preserve for review a claim for disproportionate sentencing. *Delacruz v. State,* 167 S.W.3d 904, 905 (Tex.App.-Texarkana 2005, no pet.). Guin did not file a motion for new trial. No issue is presented for our review.

Even if the contention had been preserved for review, there is no evidence in the record comparing the sentences im-

posed on persons in Texas with sentences imposed against defendants in other jurisdictions who committed a similar offense. *Alberto v. State*, 100 S.W.3d 528, 529 (Tex. App.-Texarkana 2003, no pet.); *see Fluellen v. State*, 71 S.W.3d 870, 873 (Tex.App.-Texarkana 2002, pet. ref'd).

We overrule this point of error.

### 4. Ineffective Assistance of Counsel

Guin alleges that he received ineffective assistance of counsel because trial counsel "should have submitted the issue of punishment to a jury as opposed to the trial court." The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant must show that (1) counsel's performance was so deficient that he or she was not functioning as acceptable counsel under the Sixth Amendment, and (2) but for counsel's error, the result of the proceedings would have been different. *Id.* at 687–88, 104 S.Ct. 2052; *see also Gamble v. State*, 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.).

Guin appears to suggest that counsel was unaware of the change in the law effective September 1, 2005, concerning state-jail felony offenses, that authorized the jury to recommend to the court that the sentence be suspended and that the defendant be placed on community supervision. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 4(d) (Vernon Supp.2006). However, since there was no motion for new trial filed and no evidence developed on this issue, the record is silent as to whether counsel knew of this change in the law and whether that would have precipitated a different trial strategy. The record does not affirmatively support Guin's claim of ineffective assistance of counsel. *See*

*Johnson v. State*, 691 S.W.2d 619, 627 (Tex.Crim.App.1984).

The choice of whether to submit the punishment issue to the court or jury is one of trial strategy, and we will not second-guess counsel's trial strategy. There is a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. To prevail on an ineffective assistance of counsel claim, appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* Assertions of ineffective assistance of counsel must be firmly founded in the record. *Bone v. State*, 77 S.W.3d 828, 835 (Tex.Crim.App.2002). In the absence of a record reference concerning counsel's reasoning, we must generally presume that appellant's trial counsel had a plausible reason for his or her actions. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999). Guin's fourth point of error is overruled.

We affirm the judgment of the trial court.