In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00171-CR

                                                ______________________________

 

 

                               ANDREAS TEARRI MORRIS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 196th
Judicial District Court

                                                              Hunt County, Texas

                                                            Trial
Court No. 25554

 

                                                           
                                       

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Eighteen-year-old
Cordarien Kelly’s body lay riddled with bullets after he was shot from behind
when leaving the Greenville home of an acquaintance July 1, 2007.  Three eyewitnesses identified Andreas Tearri
Morris as Kelly’s shooter.  Morris,
convicted of Kelly’s murder by a Hunt County jury and sentenced to life
imprisonment, attacks the sufficiency of the evidence as coming from
inconsistent and unreliable witnesses and attacks the sentence as being
disproportionate.  We affirm Morris’
conviction because (1) legally and factually sufficient evidence supports
Morris’ conviction, and (2) Morris’ disproportionate-sentence claim was not
preserved for our review. 

(1)        Legally and Factually Sufficient
Evidence Supports Morris’ Conviction

 

            Morris
asserts that the evidence is both legally and factually insufficient to prove
beyond a reasonable doubt that he was the person who murdered Kelly.

            In
evaluating the legal and factual sufficiency of the evidence, we use a
hypothetically correct jury charge.  Grotti v. State, 273 S.W.3d 273 (Tex.
Crim. App. 2008).  Such a charge
accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State’s burden of proof or unnecessarily restrict
the State’s theories of liability, and adequately describes the particular
offense for which the defendant was tried. 
Villarreal v. State, 286
S.W.3d 321 (Tex. Crim. App. 2009); Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

            Under a
hypothetically correct charge in this case, the jury was required to find,
beyond a reasonable doubt, that Morris (1) on or about July 1, 2007, (2) in
Hunt County, Texas, (3) intentionally and knowingly, (4) caused the death
of Kelly, (5) by shooting Kelly with a firearm.[1]

            In reviewing
the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the prosecution and determine whether, based on that evidence
and reasonable inferences therefrom, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Laster
v. State, 275 S.W.3d 512, 517–18 (Tex. Crim. App. 2009); Roberts v. State, 273 S.W.3d 322 (Tex.
Crim. App. 2008).

            In a factual
sufficiency review, we review all the evidence, but do so in a neutral light
instead of the light most favorable to the verdict.  We determine whether the evidence supporting
the verdict is either too weak to support the fact-finder’s verdict, or,
considering conflicting evidence, is so outweighed by the great weight and
preponderance of the evidence that the jury’s verdict is clearly wrong and
manifestly unjust.  Laster, 275 S.W.3d at 518; Lancon
v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007).

            Morris’
attack on the evidence focuses on the proof of his identity as the shooter.  Indeed, identification of Morris as the
person who committed the murder is part of the State’s burden of proof beyond a
reasonable doubt.  See Miller
v. State, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984); Wiggins v. State, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no
pet.).  When, as here, the identity
element of the offense is contested, we are mindful that identity may be proven
by direct evidence, circumstantial evidence, or even inferences.  Wiggins,
255 S.W.3d at 771; Roberson v. State,
16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref’d).  Here, we have direct, in-court identification
by three witnesses of Morris as the shooter. 
Morris contends, however, that this testimony was contradictory,
inconsistent, and objectively unreliable.

            A.         Testimony
of Wendy Talley

 

            On the
afternoon of July 1, 2007, Wendy Talley was at home on her front porch, from
which she could see the driveway of the house next door.  Talley saw Morris standing alone in the
driveway[2]
that afternoon, smoking a Black and Mild.[3]
Talley had seen Morris in the neighborhood on previous occasions, and it was
not unusual to see him that day.  Talley
knew Kelly, and saw him arrive on Wellington Street that afternoon with
Michelle Spradling.[4] Spradling
parked her car in the driveway two houses down from Talley.  Kelly walked over to the house next to
Talley’s—walking past Morris—who was still standing in the driveway.  Kelly emerged from the house a few minutes
later and was walking back to the car when Morris “opened up fire on him.”
Kelly’s back was to Morris when Morris emptied his pistol; Morris continued to
shoot after Kelly fell to the ground.[5]  After reloading his pistol, Morris fled the
scene in his car, which had been parked on the side of the road.  

            Later,
Talley spoke with Detective Cole with the Greenville Police Department about
the murder.  At this meeting, Talley was
able, in a photographic line-up, to identify Morris as the shooter.[6]  Talley also identified Morris in the
courtroom as the individual who shot Kelly on the afternoon of July 1, 2007.[7]
Even though there were many people in the community who did not want her to
testify, Talley was determined to do so because she is concerned about the
safety of her neighborhood.  

            B.         Testimony
of Anthony Jones

 

            Anthony Jones is a seventeen-year-old student at
Greenville High School who spent time on Wellington Street in the summer of
2007.[8]
Jones grew up with Kelly, and the two ran track together.  Jones also knows Morris, as Morris grew up
with the Jones brothers.  

            As he was
walking through a vacant lot between Polk and Wellington Streets on the
afternoon of July 1, 2007, Jones heard gunshots.  When Jones looked in the direction of the shots,
he saw Morris shooting Kelly.  Kelly was
trying to run, but then fell to the ground. 
Jones saw Kelly and Morris before he heard the shots, when Kelly emerged
from the third house on Wellington and walked at an angle toward the
street.  It looked as if Morris came out
of the second house on Wellington.  Both
were walking toward the street and toward one another when Morris fired his
gun.[9]  Kelly was between the two houses, close to
the street, when he was shot.  After
having seen this, Jones hid behind some bushes; after about five minutes, he
walked back home.  At trial, Jones identified
Morris as the shooter.  

            Jones did not report his knowledge
of this event to the police until December 2007, when he was arrested for
possession of marihuana.[10]  At that time, Jones told law enforcement
officers what he knew about Kelly’s murder. 
Jones did not come forward earlier because he wanted nothing to do with
it, and denied that the district attorney’s office “worked out a deal” for his
testimony. 

            C.        Testimony of Xavier Jones

 

            On
the afternoon of July 1, 2007, Xavier Jones was on Wellington Street visiting
with Tristan Carter.[11]
 Xavier and Carter were standing in the
front yard when a car, driven by Spradling,[12]
pulled into the driveway.  Kelly[13]
was in the passenger seat, and Spradling’s children were in the back seat.  When Kelly got out of the car, he and Xavier
spoke briefly before Kelly walked to the house next door.   Spradling remained in the car.  Xavier saw Morris, as Kelly walked next door.  It was neither unusual to see Morris “hanging
out” on Wellington Street, nor unusual to see Kelly on Wellington Street. On
this day, however, Xavier Jones saw Morris shoot Kelly.  After he heard about two gunshots, Xavier ran
through the house and into the woods behind the house, as more shots were being
fired.  Xavier returned to Wellington
Street after the police arrived, but he was “too shocked” to talk to them.  

            Xavier had previously provided the
police with a sworn statement indicating that he did not witness Kelly’s
murder.[14]
 He denies having been promised anything
in exchange for his testimony and admits that he lied to the police in the past
and has been convicted of doing so.[15]  

            D.        Testimony
of Michelle Spradling

 

            Spradling’s
testimony did not identify Morris as the shooter, but adds to the
narrative.  On the day of his murder,
Kelly called Spradling for a ride to Wellington Street.  Spradling, along with her two young children
seated in the back seat of the car, met Kelly at a store and drove him to
Wellington Street.  Spradling parked in a
driveway twenty to thirty feet from the house Kelly visited.[16]  While waiting for Kelly, Spradling got out of
the car to visit with Xavier and Tristan Carter, who were standing under a
nearby shade tree.  Jones and Carter were
also friends of Kelly.  

 

            After three
or four minutes, Kelly emerged from the house and began walking back to the
car.  When she saw Kelly, Spradling
returned to the car.  Once inside,
Spradling heard a series of gunshots and saw one black male—the shooter.  When she saw Kelly fall to the ground,
Spradling immediately fled the scene. 
While Spradling later came forward to give a statement to the
authorities, she could identify the shooter only as a black male. 

            E.         Analysis of the Evidence

 

            Morris claims the evidence is
factually insufficient because, when all of the evidence taken together is
viewed in a neutral light, it is so weak that the verdict is clearly wrong and
unjust.  Two of the eyewitnesses
testified only after they were accused of their own offenses.  The reliability of testimony is debatable and
even insufficient, claims Morris, given Spradling’s testimony that she did not
see the shooter from a short distance, and Talley testified she saw the shooter
from a greater distance.  Further, the
murder weapon was never located, and there was no evidence Morris ever owned a
gun.

            Anthony Jones’ testimony might be
disbelieved because it contradicts that given by Spradling and because it came
months after the shooting and only after he had been arrested on a narcotics
charge.  Talley’s testimony might be
disbelieved because her physical view of the events here can be called into
question.  Further, Talley testified that
many people come and go from the residence where Kelly was killed, and she did
not personally know Morris.

            The testimony of Xavier Jones might
be disbelieved simply because he readily admits to having been convicted of
lying to authorities in the past, and in this case, he provided the police with
a false statement regarding his whereabouts at the time of the shooting.  Further, he is currently serving prison time
for three felony convictions.  Indeed,
his character and veracity are not sterling.

            Morris contends this testimony is so
unreliable and conflicts to such a degree that any rational jury must find
reasonable doubt as to the identity of the shooter.  He argues this especially in light of the
fact that the murder weapon was never located, and in the absence of evidence
that Morris was known to carry a weapon. 
Morris also points out that there is no forensic evidence linking him to
the shooting.

            When we view this evidence in the
light most favorable to the prosecution, it is plain that a rational trier of
fact could have found the essential elements of the crime of murder, including
identification of Morris as the shooter. 
Here, the element of identity was proven by direct evidence, that is,
the testimony of three eyewitnesses. 
That the three eyewitnesses might be disbelieved does not make their
evidence legally insufficient; that is the province of the jury.  The evidence is legally sufficient.

            Morris further
contends that a neutral review of all of the evidence demonstrates that proof
of his guilt is so obviously weak as to be clearly wrong, manifestly unjust,
and against the great weight and preponderance of the conflicting
evidence.  Watson v. State, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006).  Morris points out that the testimony of both
Xavier Jones and Anthony Jones is wholly unreliable, given the fact that
neither came forward, until long after the fact, with the information they knew
of this crime.  Further, both have had
trouble with the law in the past, and Xavier Jones is a three-time convicted
felon who has previously lied to authorities.

            Certainly, the testimony of each of
the eyewitnesses could be disbelieved in varying degrees; yet, the jury is the
exclusive judge of the credibility of the witnesses and of the weight to be
given their testimony.  Reconciliation of
conflicts in the evidence is also within the exclusive province of the
jury.  Wyatt v. State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000); Barnes v. State, 876 S.W.2d 316, 321
(Tex. Crim. App. 1994).  The jury may
choose to believe some testimony and disbelieve other testimony.  Wyatt,
34 S.W.3d at 30.  Moreover, we afford “almost complete
deference to a jury’s decision when that decision is based upon an evaluation
of credibility.”  Lancon, 253 S.W.3d at 705.

            We conclude the evidence was both
legally and factually sufficient to support Morris’ conviction.  Viewing the evidence in the light most
favorable to the conviction, a rational jury could have found the essential
elements of the crime beyond a reasonable doubt.  See
Laster, 275 S.W.3d at 517.  Neither
was the evidence so weak as to render the verdict clearly wrong or manifestly
unjust, nor was the jury’s verdict against the great weight and preponderance
of the evidence.  See Watson, 204 S.W.3d at 414–15. 
Accordingly, Morris’ legal and factual sufficiency points of error are
overruled. 

(2)        Morris’ Disproportionate Sentence Claim
Was Not Preserved for Our Review

 

            Morris also
claims that the life sentence he received is disproportionate to the offense of
murder.  It is claimed that the sentence
here is “so plainly disproportionate to the offense as to shock the sense of
humankind and thus constitute cruel and unusual punishment prohibited by the
United States and Texas Constitutions.”  See Hyde
v. State, 723 S.W.2d 754 (Tex. App.—Texarkana 1986, no pet.).

            To preserve
a complaint for appellate review, Morris must have presented to the trial court
a timely request, objection, or motion stating the specific grounds for the
ruling desired.  Tex. R. App. P. 33.1(a)(1)(A).  This Court has held that a defendant is
required to raise a disproportionality objection to a sentence at the time the
sentence is imposed or by a timely-filed motion for new trial.  Mullins
v. State, 208 S.W.3d 469, 470 n.1 (Tex. App.—Texarkana 2006, no pet.).

            When Morris’
sentence was announced and imposed, no objection was made on the basis that the
sentence was disproportionate to his crime. 
In his motion for new trial, it was incumbent on Morris to cite specific
legal authority and to provide legal arguments based on that authority.  See
Bell v. State, 90 S.W.3d 301, 305 (Tex. Crim. App. 2002).  Morris’ unsupported and general challenge
that the sentence was contrary to the law and the evidence is insufficient to
preserve his complaint on appeal, attacking the constitutionality of the
sentence.[17]  Additionally, the sentence assessed fell
within the range provided for first-degree felony punishments.  We overrule this point of error.

 

 

 

 

            We
affirm the judgment of the trial court.

 

 

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          April
26, 2010

Date Decided:             April
27, 2010

 

Do Not Publish

 

 

 











[1]See Tex.
Penal Code Ann. § 19.02 (Vernon 2003).





[2]The
driveway runs between Talley’s house and the house next door.  There were no cars in the driveway.

 





[3]Talley
testified that the cigar looked like a Black and Mild because it had a tip on
it. 

 





[4]Kelly
and Spradling were in the neighborhood “all the time.”  

 





[5]Talley
never saw the pistol until Morris began to fire.  

 





[6]Morris
does not contest the validity of this identification procedure.

 





[7]Talley
does not know Morris personally, but knows who he is and knows his family. 

 





[8]Jones
lives on Walnut Street, approximately two blocks from Wellington Street. 





[9]Jones
does not recall having seen a vehicle in the driveway of either of the houses,
and he did not see anyone else in the area of the shooting.  

 





[10]As
a result of his arrest, Jones was ordered by the court to receive drug
counseling. 

 





[11]Xavier
is currently serving a six-year concurrent sentence in the Texas Department of
Criminal Justice for aggravated robbery, burglary of a habitation, and
possession of a controlled substance. 

 





[12]Jones
was also acquainted with Spradling and Morris. 
Kelly, Carter, and Xavier are all about the same age; Morris is older.

 





[13]Jones
knew Kelly and considered him to be a friend. 






[14]Jones’
statement reads,

 

I was not around
when KD was killed on Welletion [sic] Street.  I was on Speedway Street at the time with my
family and I got a call that KD was dead layin [sic] on the ground. 

 





[15]The
charges in that case were failure to identify and giving false or fictitious
information. 

 





[16]Spradling
testified that Kelly did not have a gun with him.






[17]Even
if the contention had been preserved for review, the record contains no
evidence comparing the sentence imposed here with sentences imposed against
defendants in Texas and in other jurisdictions who committed a similar
offense.  See Guin v. State, 209 S.W.3d 682, 687 (Tex. App.—Texarkana 2006,
no pet.).