PD-0259-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/22/2015 2:58:17 PM
Accepted 5/26/2015 10:11:34 AM
ABEL ACOSTA
CLERK

PD-0259-15

## IN THE COURT OF CRIMINAL APPEALS
## FOR THE STATE OF TEXAS

**CHRISTOPHER LONG,**

**PETITIONER,**

**VS.**

**THE STATE OF TEXAS,**

**RESPONDENT.**

On Appeal in Cause No. 13-05-11,818 in the
24th Judicial District Court of DeWitt County, Texas
Hon. Juergen "Skipper" Koetter, Judge Presiding

## FIRST AMENDED PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

May 26, 2015

ABEL ACOSTA, CLERK

Luis A. Martinez
Bar No. 24010213
P.O. Box 410
Victoria, Texas 77902
(361) 575-6764 telephone
(361) 575-8454 telefax
Email:
Lamvictoriacounty@gmail.com

ATTORNEY FOR PETITIONER
CHRISTOPHER LONG

May 22, 2015

# IDENTITY OF JUDGE, PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 68.4(a), the parties to the suit are as follow:

| | |
|---|---|
| **APPELLANT** | **CHRISTOPHER LONG** |
| **APPELLEE** | **THE STATE OF TEXAS** |
| **TRIAL JUDGE** | **HON. JUERGEN KOETTER** |
| **STATE'S ATTY AT TRIAL:** | **HON. MICHAEL SHEPPARD**<br>24th Judicial District Attorney<br>DeWitt County Courthouse<br>307 N. Gonzalez<br>Cuero, Texas 77954 |
| **DEFENSE ATTY AT TRIAL:** | **HON. CHRIS ISLES**<br>P.O. Box 389<br>Refugio, Texas 78377 |
| **APPELLATE STATE'S ATTY:** | **HON. ROBERT LASSMAN**<br>24th Judicial District Attorney<br>DeWitt County Courthouse<br>307 N. Gonzalez<br>Cuero, Texas 77954 |
| **APPELLATE DEFENSE ATTY:** | **HON. LUIS A. MARTINEZ**<br>P.O. Box 410<br>Victoria, Texas 77902 |

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES AND COUNSEL.....................i
TABLE OF CONTENTS.................................................ii
INDEX OF AUTHORITIES............................................ iii

I.     STATEMENT REGARDING ORAL ARGUMENT......................... 2

II.    STATEMENT OF THE CASE ...................................3

III.   STATEMENT OF PROCEDURAL HISTORY..............................3

IV.   GROUND FOR REVIEW...................................4

V.    ARGUMENT.................................................4

WHEN A TRIAL JUDGE ACTS AS AN ADVERSARY OR AN ADVOCATE BY INTERROGATING WITNESSES DURING A SENTENCING HEARING, ISN'T REQUIRING A FINDING OF "EGREGIOUS CONDUCT" ACTUALLY SUBJECTING A TRIAL JUDGE'S CONDUCT TO A HARM ANALYSIS?

VI.   CONCLUSION AND PRAYER...................................7

VII.  CERTIFICATE OF COMPLIANCE..................................9

VIII. CERTIFICATE OF SERVICE......................................9

IX.   APPENDIX.................................................10

# LIST OF AUTHORITIES

Cases:                                                                    Page

*Arizona v. Fuliminante,* 499 U.S. 279 (1991)..............................................7

*Blue v. State,* 41 S.W.3d 129 (Tex.Crim.App. 2000)...................................6

*Cain v. State,* 947 S.W.2d 262 (Tex.Crim.App. 1997)................................7

*Hernandez v. State,* 268 S.W.3d 176
    (Tex.App.—Corpus Christi, 2008, no pet.)........................................6

*Trung The Luu v. State,* 440 S.W.3d 123 (Tex.App.—Houston [14th Dist.]
    2013, no pet.)......................................................................4

*Neder v. United States,* 527 U.S. 1 (1999).............................................7

*Unkart v. State,* 400 S.W.3d 94 (Tex.Crim.App. 2013)............................ 6


Statutes:

TEX. PEN. CODE §37.03..............................................................1

T.R.A.P. 49.1........................................................................3

T.R.A.P. 68.4.........................................................................4

iii

PD-0259-15

---

## IN THE COURT OF CRIMINAL APPEALS
## FOR THE STATE OF TEXAS

---

**CHRISTOPHER LONG,**

**PETITIONER,**

**VS.**

**THE STATE OF TEXAS,**

**RESPONDENT.**

---

On Appeal in Cause No. 13-05-11,818 in the
24th Judicial District Court of DeWitt County, Texas
Hon. Juergen "Skipper" Koetter, Judge Presiding

---

### FIRST AMENDED PETITION FOR DISCRETIONARY REVIEW

---

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW, **CHRISTOPHER LONG,** Petitioner in this matter and respectfully submits this PETITION FOR DISCRETIONARY REVIEW arising from the judgment of the 13th Judicial District Court of Appeals' decision affirming the sentence imposed in the trial court after convicting him of the offense of "AGGRAVATED PERJURY," a Third Degree Felony. *See* TEX PEN. CODE §37.03.

This appeal originally arises from the 24th Judicial District Court of DeWitt County, Texas, the Honorable Juergen "Skipper" Koetter, Judge Presiding, in District Court Cause Number 13-05-11,818, in which the Petitioner, **CHRISTOPHER LONG**, was the Defendant and the State of Texas was the Plaintiff. Petitioner pled guilty to an indictment charging him with "Aggravated Perjury." The Trial Court sentenced Petitioner to 6 years in the Texas Department of Criminal Justice-Institutional Division and $1,905.00 in court costs.

## I.

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner respectfully requests that this Honorable Court of Criminal Appeals allow him the opportunity to argue his case before the Court of Criminal Appeals. Petitioner believes that this matter requires that the Court of Criminal Appeals ask questions regarding the facts and circumstances in this case in order to adequately present his point for consideration. Petitioner believes it to be essential that he be allowed to interact with the Court of Criminal Appeals to explain his position and his interpretation of the cases relied upon.

## II.

## STATEMENT OF THE CASE

Appellant was formally charged with "AGGRAVATED PERJURY" in a one-count indictment filed with the DeWitt County District Clerk.

Petitioner subsequently pled guilty and went to the Trial Court for punishment. On the same day as Appellant's plea, the Trial Court conducted a punishment hearing. After considering the arguments of counsel and the evidence presented by both parties during the punishment hearing, the Trial Court assessed Appellant's punishment as imprisonment in the Institutional Division of the Texas Department of Criminal Justice for six (6) years and costs of court.

## III.

## STATEMENT OF PROCEDURAL HISTORY

Following his sentencing, Petitioner timely filed his notice of appeal. After briefs were submitted, and no oral argument, the 13th Court of Appeals set the matter for submission on, or about, December 29, 2014. On, or about, January 15, 2015, the 13th Court of Appeals issued a memorandum opinion overruling Petitioner's sole issue and affirmed the trial court's sentence.

Petitioner timely filed a Motion for Rehearing pursuant to T.R.A.P. 49.1 on, or about, January 30, 2015. The Motion for Rehearing was denied by the 13th Judicial District Court of Appeals on, or about, February 6, 2015.

3

On March 10, 2015, a Motion to Extend Time to File PDR was filed and approved by this Court, extending the deadline for filing a Petition for Discretionary Review until May 8, 2015.

## IV.

## GROUNDS FOR REVIEW

In accordance with Rule 68.4 of the Texas Rules of Appellate Procedure, Petitioner presents the following ground for review:

**WHEN A TRIAL JUDGE ACTS AS AN ADVERSARY OR AN ADVOCATE BY INTERROGATING WITNESSES DURING A SENTENCING HEARING, ISN'T REQUIRING A FINDING OF "EGREGIOUS CONDUCT" ACTUALLY SUBJECTING A TRIAL JUDGE'S CONDUCT TO A HARM ANALYSIS?**

## V.

## ARGUMENT

"A judge should not act as an advocate or adversary for any party." *Trung The Luu v. State*, 440 S.W.3d 123, 128 (Tex.App.—Houston [14th Dist.] 2013, no pet.) After reviewing the transcripts of Petitioner's sentencing hearing, the 13th Court of Appeals noted in its opinion that:

> "The extent and adversarial nature of the trial judge's questioning of appellant in this case is cause for unease…"

*Long v. State*, Opinion of January 15, 2015, p. 11.

The three reviewing Justices of the 13th Court of Appeals also agreed to the

4

following:

> "Finally, even though we agree that the trial judge's questions were improperly adversarial…"

*Long v. State*, Opinion of January 15, 2015, p.13.

Further, the reviewing Justices of the 13th Court of Appeals characterized the Trial Court's questioning as follows:

> "We agree that the trial judge put questions to appellant and Candice that could fairly be characterized as adversarial; the judge challenged their testimony and probed for inconsistencies in their statements. Moreover, the general tenor of the questions indicated that the trial court judge did not rate highly the credibility of either witness."

*Long v. State*, Opinion of January 15, 2015, p. 11.

Petitioner agrees with the Court of Appeals as to these characterizations of the Trial Court's questioning. Petitioner also believes that it is significant how the 13th Court of Appeals has described the Trial Court's conduct during Appellant's sentencing hearing. The Trial Court's questions were extensive, improper and adversarial to the extent that the conduct caused the Court of Appeals "unease." The question then becomes: What else must be shown to conclude that Appellant's fundamental and constitutional right to a neutral, detached and impartial tribunal were offended? Appellant contends that it is not necessary to conclude that the Trial Court's actions be egregious in order to find fundamental error as explained

5

*infra.*

The 13th Court of Appeals cited its previous decision in *Hernandez* (relying on *Blue v. State)* that a defendant may raise the issue of the trial court's lack of impartiality in sentencing for the first time so long as the complained of conduct was "so egregious as to deem the judge biased on the matter of punishment." *Long v. State*, Opinion of January 15, 2015, p. 10 (*citing Hernandez v. State,* 268 S.W.3d 176, 184 n. 34 (Tex.App.—Corpus Christi 2008, no pet.)(*citing Blue v. State*, 41 S.W.3d 129, 137 (Tex.Crim.app. 2000)(Keasler, J., concurring).

In *Unkart v. State*, this Court clarified the status of *Blue v. State*:

> We now take the opportunity to clarify the status of *Blue.*
> \*\*\*
> With respect to *Blue,* it is not possible to ascertain a majority holding or the narrowest ground or rule that commands a majority of the court. The rationales of the plurality and concurring opinions are entirely disparate: they did not even focus on the same error, much less give the same reason why it was error. The plurality focused on the effect of the trial judge's comments on the jury, while Judge Keasler considered the comments merely as evidence that the trial judge was biased. Consequently, the *Blue* decision has no precedential value. The opinions in the *Blue* case may nevertheless be considered for any persuasive value they might have, in the same way as any other opinion that does not command a majority of this Court, such as a concurring opinion.

*Unkart v. State*, 400 S.W.3d 94, 100-101 (Tex.Crim.App. 2013).

It is in the concurring opinion that "egregious" is identified as a benchmark

6

for finding fundamental error. Does this actually make "egregious" a requisite finding? Appellant does not believe that it does. Rather, Appellant contends that the adversarial questioning, advocating against Appellant by the Trial Court that caused 13th Court of Appeals unease, that specific conduct is enough to find fundamental error.

The right to an impartial judge is so sacred that the United States Supreme Court has declared a violation of this right to be "structural error." *Neder v. United States*, 527 U.S. 1 (1999). The presence of a biased judge on the bench is a structural defect in the trial mechanism *Arizona v. Fuliminante*, 499 U.S. 279, 309-310 (1991). Errors that the Supreme Court has designated as "structural" are categorically immune from harmless error analysis. *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App. 1997).

Requiring that a court of appeals find that conduct, which is clearly adversarial by their own finding, also be "egregious" in order to find structural error requires *de facto* harm analysis. It is tantamount to finding "well, appellant wasn't denied *that much* of a neutral and detached tribunal."

## VI.

## CONCLUSION AND PRAYER

WHEREFORE, for the reasons set forth above, Petitioner submits that the Trial Court erred. Petitioner prays that the Court of Criminal Appeals grant this

7

Petition for Discretionary Review; allow Petitioner to brief the issues raised by this matter and allow oral argument. Following the briefing and oral argument, Petitioner respectfully prays that this Honorable Court reverse and render the sentence below and/or reverse and remand this case to the 13th Court of Appeals for further proceedings and/or remand the case to the Trial Court for a new sentencing. Petitioner further prays for general relief, and any other relief he is entitled to in law or in equity.

Respectfully Submitted,

Luis A. Martinez, P.C.
P.O. Box 410
Victoria, Texas 77902-0410
(361) 575-6764 (Telephone)
(361) 575-8454 (Telecopier)

By:

Luis A. Martinez
State Bar No. 24010213
ATTORNEY FOR PETITIONER
CHRISTOPHER LONG

## VII.

## CERTIFICATE OF COMPLIANCE

In accordance with Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned, Luis A. Martinez, I hereby certify that the number of words in the above Petition for Discretionary Review, excluding those matters listed in Rule 9.4(i)(3), is 871.

_____
Luis A. Martinez

## VIII.
## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing document was served upon the person below in the manner indicated on this 22nd day of May, 2015, pursuant to the Texas Rules of Appellate Procedure.

_____
Luis A. Martinez

*Via E-Mail*
The Hon. Robert C. Lassman
DeWitt County District Attorney
DeWitt County Courthouse
Cuero, Texas 77954

*Via Certified Mail, RRR*
State Prosecuting Attorney
P.O. Box 12405
Austin, Texas 78711

9

# APPENDIX

1.    Opinion of the 13th Court of Appeals, *Long v. State*, January 15, 2015.



NUMBER 13-13-00579-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHRISTOPHER LONG,                                                     Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

On appeal from the 24th District Court
of De Witt County, Texas.

# MEMORANDUM OPINION

Before Justices Benavides, Perkes, and Longoria
Memorandum Opinion by Justice Longoria

By one issue, appellant Christopher Long challenges his sentence of six years' imprisonment for aggravated perjury, a third-degree felony. *See* TEX. PENAL CODE ANN. § 37.03 (West, Westlaw through 2013 3d C.S.). We affirm.

## I. BACKGROUND

DeWitt County District Attorney Michael Sheppard testified at appellant's trial that appellant, a confidential informant, turned over a quantity of cocaine to authorities and stated that he had purchased the cocaine from a man named Brandon Michalek. The State brought charges against Michalek arising out of the sale. At Michalek's trial, appellant changed his story and told the court that he had not purchased cocaine from Michalek and that the cocaine actually belonged to appellant. As a result, the State dismissed the charges against Michalek and charged appellant with aggravated perjury, a third-degree felony. *See id.* Appellant entered an open plea of guilty, judicially confessed to all of the elements of the offense, and opted for the trial court judge to assess punishment. With the agreement of the parties, the trial judge deferred accepting the plea and making a finding of guilt until after hearing evidence on punishment. Appellant requested that the court impose a term of community supervision, and the State recommended a minimum sentence of six years' imprisonment.

Appellant and his wife, Candice Long (Candice), testified at the punishment hearing. After the attorneys for both parties informed the trial judge that they had no more questions for appellant, the trial court judge stated: "[t]he Court has a little other information that I'd like to get from this witness." Appellant's counsel did not object, and the trial judge proceeded to question appellant about certain matters raised by his testimony. The record of the questioning is extensive, so we reproduce a representative sample in which the judge questions appellant about his testimony that John Herrick, Michalek's trial counsel in the drug case, allegedly took appellant on a ride to San Antonio and convinced him not to testify:

2

THE COURT: Mr. Long, on the day that you were telling Mr. Sheppard about when Mr. Herrick and his wife came to your house and took you to San Antonio, okay, you know what day I'm talking about?

[APPELLANT]: Yes, sir.

THE COURT: Okay. When he pulled up in front of your house did you know who he was?

[APPELLANT]: No, sir, I did not. At first I didn't, I didn't recognize the car.

THE COURT: Had you ever talked to him before that on the phone or by any other means?

[APPELLANT]: No, sir.

THE COURT: And so this total stranger pulled up in front of your house and, what, how did he convince you to get in the car and go to San Antonio?

[APPELLANT]: I don't know. He's real convincing.

THE COURT: Did he tell you that he was Mr. Michalek's lawyer?

[APPELLANT]: At first he never told me that until I got in the car and then he told me he was Mr. Michalek's.

THE COURT: Well, tell me what he told you to get you to go to San Antonio with him. I mean, can I pull up to your house and say let's go to Laredo and you'll just jump in and go to Laredo?

[APPELLANT]: No.

THE COURT: Well. . .

[APPELLANT]: He didn't really say nothing, he just asked me to ride with him to San Antonio, so I did.

THE COURT: A total stranger just pulled up in front of your house and said, hey, let's go to San Antonio and you got in the car and went with him?

[APPELLANT]: Yes, sir.

THE COURT: Does that seem kind of unbelievable to you?

[APPELLANT]: Yeah. But that's what happened. Honestly, that's what happened.

3

THE COURT: And then as you have previously testified, all those things that occurred on the trip, you told Mr. Sheppard about everything that happened on the trip. Nothing else happened on that trip, right?

[APPELLANT]: No, sir.

THE COURT: And you had never ever before that day ever heard of or met Mr. Herrick?

[APPELLANT]: No, sir.

THE COURT: And he hasn't been to see you at the jail?

[APPELLANT]: No, sir.

THE COURT: He hasn't sent you messages through other persons, verbal messages or anything else?

[APPELLANT]: No, sir.

THE COURT: No threats or anything else?

[APPELLANT]: I ain't seen him since. . .

THE COURT: April the 2nd —

[APPELLANT]: Yes, sir.

THE COURT: —2013, you have not seen or heard from Mr. Michalek?

[APPELLANT]: I ain't seen him or heard from him.

THE COURT: Do you know where he is today?

[APPELLANT]: No, sir, I don't.

THE COURT: Well, do you think that what you're doing today would trigger his—him[1] taking action on the threats that were made against you?

[APPELLANT]: Most likely.

THE COURT: And so what's the incentive, what are you doing here?

---

[1] Here, the trial judge is referring to threats that Michalek and one of his associates allegedly made against appellant and his family.

4

[APPELLANT]: I'm doing the right thing.

THE COURT: And what brought you to this place? How did you get here to—how did you come to realize that lying to the State and interfering with the operation of justice is a bad thing and that you wanted to do this?

[APPELLANT]: Sitting in that eight-man tank got me realizing that I did the wrong thing and I shouldn't never lie. Being incarcerated has taught me a lesson. I should never have lied under oath, never. I should have told the truth while I had the chance.

Following this exchange, the trial judge permitted the attorneys for both parties to ask follow-up questions. Appellant's next and final witness was his wife Candice. The trial judge posed similar questions to her after the parties' attorneys finished their examinations. The record of the judge's questioning of Candice is also extensive so we again reproduce a representative sample:

THE COURT: Okay. You've said that at some point in time Mr. Long went to—went somewhere with Mr. Herrick. Is that right?

THE WITNESS: Yes, sir.

THE COURT: And you also said that you had met Mr. Herrick about one week before that happened?

THE WITNESS: Yes, sir.

THE COURT: And that was because he came to your house one week earlier; is that correct?

THE WITNESS: Yes, sir.

THE COURT: And was Mr. Long home that day or was he not there?

THE WITNESS: When?

THE COURT: The first time that Mr. Herrick came to your house. Not the day that he went off with him, the time before that when you said you met him, was Mr. Long present when you met him or not?

THE WITNESS: Yes, sir.

5

THE COURT: On the day that Mr. Long went somewhere with Mr. Herrick and came back at nine or ten o'clock at night, did he tell you ahead of time that Mr. Herrick was going to pick him up or did he come in and tell you that Mr. Herrick was there and wanted him to go somewhere with him?

THE WITNESS: If he. . .

THE COURT: Did he tell you during the day, before Mr. Herrick got there, John Herrick is coming to pick me up, we're going to go somewhere, or did he come in and tell you John Herrick is here and I'm going to go somewhere with him? Did he know ahead of time that he was coming to pick him up?

THE WITNESS: Yes, sir.

THE COURT: How do you know that?

THE WITNESS: He came in the house and told me that John Herrick was coming to pick him up and that he'll be back late.

THE COURT: But John Herrick wasn't there yet; is that correct?

THE WITNESS: I don't know. I was inside.

THE COURT: Okay. So you think that he knew that John Herrick was coming to pick him up before he got there or do you think he didn't know before he got there?

THE WITNESS: I don't think he knew.

THE COURT: So John Herrick showed up and then your husband didn't know he was coming to pick him up but he came and told you that he was there and that he was going to leave with him?

THE WITNESS: I don't know. All I know is he came in and told me he was leaving and that he would be back later and that he was going with John Herrick.

THE COURT: Okay. And he had met John Herrick with you a week earlier?

THE WITNESS: Well, he met him before I did. I just met him the same day when we both walked outside.

THE COURT: Okay. So he had met him even before John Herrick showed up at your house a week before he took him off wherever they went?

6

THE WITNESS: Yes, sir. I think he met him in court when they had court one day.

THE COURT: So how long before—how long before Mr. Long went with Mr. Herrick do you think he knew him? A month?

THE WITNESS: I don't know.

THE COURT: But you're sure that he did know him before the day that he came to get him and take him off wherever they went?

THE WITNESS: I don't know when he met him.

THE COURT: But do you know for sure that he knew him before he went somewhere with him?

THE WITNESS: Yes, sir. I think so.

THE COURT: Okay. And tell me why you think you're sure of that.

THE WITNESS: Well, because he was supposed to be one of my cousin's lawyers too —

THE COURT: Okay.

THE WITNESS: —and stuff so. . . Me and my husband's around each other most of the time, but not all the time, because you've got to get a break sometime from a man so. . .

THE COURT: Why is that?

THE WITNESS: Because. A man will drive you up the wall.

THE COURT: Had — to your best of your recollection, do you remember your husband, Mr. Long, talking to you about John Herrick before the day that he went with him? So wherever they went, we're just going to call it the day they went to San Antonio. Before that day, the best of your recollection, do you remember your husband talking to you about John Herrick?

THE WITNESS: Yes, sir.

THE COURT: Okay. To the best of your recollection do you remember your husband, Mr. Long, talking to you about John Herrick before that week, that one week earlier when he came to your mother's house? There was a time when he came to your mother's house and picked your husband up,

7

you've told me that a week before that he came by your house and talked to you. Right?

THE WITNESS: He came by.

THE COURT: And talked to you and your husband and then one week later he came by, picked your husband up and took him to San Antonio for a little while.

THE WITNESS: Yes, sir.

THE COURT: Is that what you remember?

THE WITNESS: Yes, sir.

THE COURT: Now, before the first time—I assume that the time a week before he took him off, that that was the first time John Herrick had ever been to your mother's house.

THE WITNESS: Yes, sir.

THE COURT: That you know of. Before he came to your mother's house the first time, do you ever remember your husband talking about John Herrick before that?

THE WITNESS: About meeting him in court one day.

THE COURT: Okay. So he had talked about it before he came to the house the first time?

THE WITNESS: Yes. Because John Herrick and Brandon were outside when Chris was leaving the courtroom—

THE COURT: Okay.

Following closing arguments, the trial court judge found appellant guilty and assessed punishment at six years' imprisonment in the Texas Department of Criminal Justice—Institutional Division, court costs, and no fine.

8

## II. JUDICIAL BIAS

By his sole issue, appellant argues that the trial judge committed fundamental error because he abandoned the role of a neutral, detached hearing officer and took on the role of an advocate for the State.

### A. Applicable Law

"Due process requires a neutral and detached hearing body or officer." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). A criminal trial must be held before a judge with no actual bias against a defendant or interest in the outcome of the defendant's case. *Avilez v. State*, 333 S.W.3d 661, 673 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). In the absence of a clear showing to the contrary, we will presume that the trial judge was neutral, detached, and unbiased in all phases of the trial. *Brumit*, 206 S.W.3d at 645 (citing *Thompson v. State*, 641 S.W.2d 920, 921 (Tex. Crim. App. [Panel. Op.] 1982)).

This Court has concluded that a defendant has an absolute right to an impartial judge at both the guilt/innocence and punishment stages of the trial. *Hernandez v. State*, 268 S.W.3d 176, 185 (Tex. App.—Corpus Christi 2008, no pet.).[2] Applying the Texas Court of Criminal Appeals's three-part *Marin* framework,[3] we further concluded that a defendant may raise an issue of the trial court's lack of impartiality in sentencing for the

---

[2] At the time this Court issued its decision in *Hernandez*, five other courts of appeals had reached the same conclusion. *See Hernandez v. State*, 268 S.W.3d 176, 184 n.34 (Tex. App.—Corpus Christi 2008, no pet.) (collecting cases).

[3] In *Marin v. State*, the Texas Court of Criminal Appeals divided a defendant's rights into three categories: absolute rights, waiver-only rights, and forfeitable rights that must be implemented on request. 851 S.W.2d 275, 278–80 (Tex. Crim. App. 1993) (en banc), *overruled on other grounds*, *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (en banc). The Court further held that the requirement of Rule 33.1 that a defendant must object to preserve error does not apply to rights falling within the first two categories. *See id.* at 279–80; *see also Blue v. State*, 41 S.W.3d 129, 137 (Tex. Crim. App. 2000) (Keasler, J., concurring) (explaining the history of the *Marin* framework).

first time on appeal so long as the complained-of conduct was "so egregious as to deem the judge biased on the matter of punishment." *Id.* at 185–86 (citing *Blue v. State*, 41 S.W.3d 129, 137 (Tex. Crim. App. 2000) (Keasler, J., concurring)).

"Texas is 'second to none' in its disapproval of judges' examination of witnesses." *Galvan v. State*, 988 S.W.2d 291, 297 (Tex. App.—Texarkana 1999, pet. ref'd) (citing *Morrison v. State*, 845 S.W.2d 882, 886 n.10 (Tex. Crim. App. 1992) (en banc)). Texas is the only jurisdiction that has not adopted a version of Federal Rule of Evidence 614, which explicitly permits judicial examination of witnesses. *Id.* However, a trial court judge may question a witness to clarify a point or ask the witness to repeat something the judge did not hear. *Williams v. State*, 89 S.W.3d 325, 328 (Tex. App.—Texarkana 2002, pet. ref'd). Texas law discourages questioning by the trial judge in other areas because it presents two dangers: (1) the questioning could convey the judge's opinion of the case to the jury and so influence their verdict; and (2) the court "in its zeal and active participation" could assume the role of an advocate and lose the neutral and detached role that is required of a judge. *Id.*

### B. Analysis

Only the second potential harm is at issue here because the trial judge's examinations occurred in the context of a guilty-plea proceeding where the parties agreed that the judge would assess punishment. *See Guinn v. State*, 209 S.W.3d 682, 686 (Tex. App.—Texarkana 2006, no pet.) ("The first potential danger cannot apply in this case since this entire proceeding was before the court during a guilty plea proceeding."). Appellant argues that the trial court improperly stepped into the role of the prosecutor, something which is not consistent with due process. *See United States v. Lanham*, 416

10

F.2d 1140, 1143 (5th Cir. 1969) (observing, in a jury trial, that "[i]t seems clear that the trial judge determined in his own mind that Lanham was giving perjured testimony and set out to demonstrate this to the jury. In a word, he took over prosecution. This we may not permit."). We agree that the trial judge put questions to appellant and Candice that could fairly be characterized as adversarial; the judge challenged their testimony and probed for inconsistencies in their statements. Moreover, the general tenor of the questions indicated that the trial court judge did not rate highly the credibility of either witness. However, given the context, we disagree that the judge stepped into the role of the prosecutor.

In *Moreno v. State*, the Texarkana Court of Appeals confronted a similar situation: the trial court judge extensively questioned the defendant when he testified during the guilt/innocence phase of a bench trial. 900 S.W.2d 357, 358–59 (Tex. App.—Texarkana 1995, no pet.). The court of appeals concluded that the questioning did not rise to the level of fundamental error because the judge was seeking facts for his role as factfinder, the questions would have been allowed to the parties' attorneys, the answers were within the bounds of admissible testimony, and nothing in the record revealed that the judge became so entangled in his role as an advocate that he could not make an objective fact finding. *Id.* at 359–60.

The extent and adversarial nature of the trial judge's questioning of appellant and Candice in this case is cause for unease, but after a thorough review of the record, we conclude that the rationale of *Moreno* applies to this case. The trial judge appeared to be seeking facts for his role as factfinder, the questions the judge asked of appellant and Candice would not have been out of bounds to the parties' attorneys, and the answers of

11

both were within the bounds of admissible testimony. *See Moreno*, 900 S.W.2d at 359–60; *see also Guinn*, 209 S.W.3d at 686 (concluding that the trial judge was authorized to inquire into facts relevant to disposing of the petition for community supervision filed by an appellant who entered a guilty plea). It is also relevant that appellant asked the judge to place him on community supervision. Appellant's request required the judge to make an independent determination regarding whether suspending the sentence and placing him on community supervision was in the best interests of justice, society, and appellant. TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3(a) (West, Westlaw through 2013 3d C.S.). Many of the trial judge's questions were directed at testing appellant's story that Herrick induced appellant not to testify and also promised to assist appellant with any resulting legal issues. We agree with the *Guinn* Court that the trial judge had some leeway to follow up on this issue after the parties' attorneys finished their examination, even though some of the questions went beyond what was necessary for the trial court to make a decision. *See Guinn*, 209 S.W.3d at 686–87 (holding that the trial judge did not commit fundamental error by questioning a defendant about his drug use after the witness had testified during the punishment phase that using alcohol and marijuana contributed to his offense, even though some of the judge's questions went beyond what was strictly necessary); *see also Agee v. State*, No. 03-01-00338-CR, 2002 WL 219874, at *2 (Tex. App.—Austin Feb. 14, 2002, pet. ref'd) (mem. op, not designated for publication) (holding that in a bench trial where the judge was to assess punishment, the trial court did not commit fundamental error by questioning witnesses on issues that were raised in their testimony and that were relevant to punishment). Finally, even though we agree that the

12

trial judge's questions were improperly adversarial,[4] the record does not indicate that the judge became involved as an advocate to such an extent that he could not impartially assess punishment. *See Moreno*, 900 S.W.2d at 359–60; *see also Guinn*, 209 S.W.3d at 686–87. Because appellant has not demonstrated that the trial judge's behavior was so egregious as to deem him biased, we conclude that appellant has not demonstrated fundamental error. *See Hernandez*, 268 S.W.3d at 185 (holding that trial judge's conduct rises to the level of fundamental error if it is "so egregious as to deem the judge biased on the matter of punishment"). We accordingly overrule appellant's sole issue.

## III. CONCLUSION

We affirm the judgment of the trial court.

                          NORA L. LONGORIA
                          Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
15th day of January, 2015.

---

[4] *See Trung The Luu v. State*, 440 S.W.3d 123, 128 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("A judge should not act as an advocate or adversary for any party.").