**AFFIRM; and Opinion Filed July 17, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-17-00592-CR
No. 05-17-00595-CR
No. 05-17-00596-CR

**TYLER ANTONIO GALE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F15-76789-N, F15-76792-N, & F15-76793-N**

## MEMORANDUM OPINION

Before Justices Francis, Fillmore, and Whitehill
Opinion by Justice Fillmore

Tyler Antonio Gale was indicted for five indecency with a child by exposure offenses and one attempted aggravated kidnapping offense. *See* TEX. PENAL CODE ANN. §§ 20.04(a)(4) (West 2011), 21.11(a)(2)(A) (West Supp. 2017). Gale pleaded guilty to the five indecency offenses without an agreement as to punishment and not guilty to the attempted aggravated kidnapping offense. After a bench trial on the attempted aggravated kidnapping offense, the trial court found Gale guilty of the attempted aggravated kidnapping offense and the five indecency offenses. The trial court sentenced Gale to eight years' imprisonment on the attempted aggravated kidnapping offense and on two of the indecency offenses. The trial court "stacked" the sentences and ordered that Gale would not begin serving his sentences on the two indecency offenses until after he was

released from confinement on the attempted aggravated kidnapping offense. On the remaining three indecency offenses, the trial court sentenced Gale to ten years' imprisonment, suspended the sentences, and placed Gale on community supervision for ten years, beginning when he was released from confinement on the two indecency offenses.[1]

Gale filed a motion for new trial arguing the judgments were not "in the interest of justice" and were contrary to the law and the evidence. Gale also moved for a new trial on punishment on grounds the sentences were grossly disproportionate "in light of [his] having previously been assessed for competency and because [his] sentence or sentences are violative of the goals of the Texas Penal Code that are directly expressed by the actual language thereof" and he was denied his common law and statutory rights to allocution. The trial court did not conduct a hearing on the motion for new trial, and it was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a),(c).

In four issues, Gale argues the trial court erred by exhibiting bias and acting as an advocate for the State, violating his statutory and common law rights to allocation, and imposing greatly disproportionate punishments. We affirm the trial court's judgments.

## Judicial Bias

In his first issue, Gale contends his due process rights were violated when the trial judge exhibited bias against him and acted as an advocate for the State by asking questions during the proceedings. Gale specifically complains that two questions asked by the trial judge, one at a pretrial hearing and one during the guilt phase of the trial, demonstrated the trial judge was not acting as a neutral arbiter.

---

[1] Gale appealed these three judgments, but voluntarily withdrew those appeals. *See Gale v. State*, Nos. 05-17-00591-CR, 05-17-00593-CR, & 05-17-00594-CR, 2017 WL 4930385, at *1 (Tex. App.—Dallas Oct. 31, 2017, no pet.) (mem. op., not designated for publication).

At a pretrial hearing on October 31, 2016, the trial judge confirmed that Gale understood the six charges against him and the punishment ranges for the charges. The trial judge then discussed with Gale the plea bargain offered by the State, his eligibility for parole, and the consequences of violating any conditions of parole or probation. Gale indicated he did not accept the State's plea offer and wanted to go to trial before a jury on each case. Gale confirmed he understood he faced the possibility of longer sentences by doing so.

The prosecutor informed the trial judge that the State intended to try each of the cases and would seek a maximum sentence on each offense. The prosecutor stated that, because Gale had confessed to all the indecency offenses, obtaining a guilty verdict on those offenses would not be "as difficult as it can be." The prosecutor indicated the State believed the plea offer was "more than fair considering the circumstances and considering the number of victims," and that the offer was intended to both punish Gale and give him an opportunity for rehabilitation. However, if Gale was "not wanting to get help," the State would "try to get him locked up for as long as possible for the safety of Dallas County."

The trial judge asked the prosecutor if the State planned to request that the sentences be stacked. After the prosecutor answered affirmatively, the trial judge asked Gale, "[D]id you confess to these exposures?" Gale responded, "Yes, sir." The trial judge then explained to Gale that it was "not gonna be easy to win a case if you've already confessed." Gale's counsel stated he had discussed with Gale the possibility of a "slow plea" on the indecency offenses as they were set for trial and "that's the option that he's probably gonna elect."

The trial judge explained to Gale the options of trying the cases to a jury or to the bench or pleading guilty to the indecency offenses and having either a jury or the trial judge decide punishment. The trial judge also explained that, if Gale pleaded guilty, he could be placed on

community supervision or sentenced to prison. Gale responded he was not guilty of the attempted aggravated kidnapping and "[t]hat's what [he was] hoping to beat." The trial judge asked the prosecutor if the State was willing to offer a plea bargain on the indecency offenses and go to trial on the attempted aggravated kidnapping. The prosecutor would not agree to that proposal.

After Gale stated he wanted a bench trial on the attempted aggravated kidnapping offense, the trial judge suggested that Gale discuss the indecency offenses with his attorney and asked if Gale had any questions. Gale responded, "Well, knowing that I am guilty of all the exposure charges –." The trial judge interrupted Gale and admonished him:

> You should not, at this point, admit your guilt to anything. I'm just saying if you have signed confessions and are guilty a trial may not get you anywhere. Don't stand there and admit anything yet if you don't know what you're going to do.

Gale subsequently pleaded guilty to the indecency offenses without the benefit of a plea agreement.

The attempted aggravated kidnapping charge was tried to the bench. M.W. testified that, on May 26, 2015, she was seventeen and walking to school alone. A car passed her, turned around, and parked in the Salvation Army parking lot. The man driving the car walked out of the parking lot and started walking toward M.W. on the opposite side of the street. After the man passed M.W., he crossed the street, came up behind her, and put her in a "bear hug."

According to M.W., the man was "pulling her." M.W. "dropped down to the ground" so that "it would be harder for him to pull." M.W. also began screaming and yelling for help. She felt the man "trying to drag" her "toward the way of where his car was." Another student, A.P., saw the incident and ran to help M.W. As A.P. approached, the man let go of M.W., ran to his car, and drove off.

A.P. testified he was walking toward M.W. on May 26, 2015, and saw a car pull into the "recreation center." A.P. saw a man get out of the car, walk past M.W., turn around, and grab her as if he was going to "put her in headlock." M.W. dropped to the ground, and the man tried to

pick her up. According to A.P., it looked like the man was trying to "take her, as in grab her in what he came to do." A.P. clarified that "[w]hatever was intended in his mind for him to do, he was still trying to do that until I ran up." When A.P. ran over to M.W., the man "ran off and got in his car." The trial court asked A.P. to clarify whether the man actually touched M.W. and where he touched her.

Detective Clark[2] testified he was assigned to investigate the offense and watched surveillance video obtained from the Salvation Army. Detective Clark initially did not have a suspect. However, on December 2, 2015, another incident occurred at the same location. In that case, a man got out of a parked car, and followed a student, T.S. The man was naked from the waist down and was masturbating. Detective Clark believed the two cases might be related and issued a press release. The Desoto Police Department contacted Detective Clark and told him that Gale had been arrested in Desoto for exposing himself in a similar manner to adult women in a park.

Detective Clark was also investigating an incident that had occurred on October 14, 2015, involving P.M., a sixteen-year-old student at another high school. As P.M. was walking home from school, a man followed her into a field. The man was not wearing pants and was masturbating. P.M. looked at a photo lineup and identified Gale as the man who had approached her.

Detective Clark subsequently interviewed Gale. Gale confessed to the indecency offenses involving T.S. and P.M. as well as to three additional indecency offenses based on similar conduct. Gale admitted that, during one of the other incidents, he touched the girl on her "butt." Gale also admitted he grabbed M.W. and stated he was aware from news reports that he was accused of trying to kidnap her. Gale denied he was attempting to kidnap M.W., and stated he just wanted to

---

[2] Detective Clark's first name is not in the record.

kiss her on the cheek. The recorded video of Detective Clark's interview of Gale was admitted into evidence and viewed by the trial judge.

At the conclusion of Detective Clark's testimony, the trial judge asked:

Detective, based on your training and experience, based on your investigation of this case, and your interview, do you have an opinion as to what his intent was that day?

Detective Clark responded:

His intent was to take her and put her in his car. There's no doubt in my mind. And, Judge, in seven years of doing this he's on the radar, but he's one of the more scary suspects I've ever dealt with because of how he went out for these girls and he specifically picked them out, a couple of them based on being alone.

And so in my opinion, [A.P.], without being corny, [A.P.] was the hero that day. Had he not come, he either takes her into his car or he takes her into the vegetation and does what he wants to do with her. He's a scary individual, based on my seven years, based on 15 to 20 cases a month, he's scary.

Gale also testified during the guilt phase of the trial. Gale admitted grabbing M.W., but stated he only wanted to kiss her on the cheek. Gale denied that he pulled M.W. toward his car. According to Gale, if he had intended to kidnap M.S., he would not have parked his car at the Salvation Army, locked it, and put the keys in his pocket. Gale also pointed out there were houses and apartments in the area, he "wouldn't really call it a 100 percent isolated place," and he did not try to hold M.W. in a place where there was no one around. Gale testified he was not in a "right frame of mind" at the time of offense. Using a photograph of the scene, the trial judge asked Gale several questions about where he grabbed M.W. and the location of houses in the area.

*Analysis*

Gale argues the trial judge took on the role of an advocate by questioning Gale during the pretrial hearing and Detective Clark during the guilt phase of the bench trial on the attempted aggravated kidnapping offense. Gale did not object to either question, but argues the trial judge's

–6–

questions constituted fundamental and structural error that may be raised for the first time on appeal.

Most appellate complaints must be preserved by timely request for relief in the trial court. TEX. R. APP. P. 33.1(a)(1); *Unkart v. State*, 400 S.W.3d 94, 98 (Tex. Crim. App. 2013). However, there are some exceptions to this rule. *See Marin v. State*, 851 S.W.2d 275, 278–80 (Tex. Crim. App. 1993). The court of criminal appeals has recognized two "relatively small" categories of errors—violations of "rights which are waivable only" and denials of "absolute systemic requirements"—which may be addressed on appeal regardless of whether an objection was made in the trial court. *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002) (citing *Marin*, 851 S.W.2d at 280).

In *Proenza v. State*, 541 S.W.3d 786, 788–89 (Tex. Crim. App. 2017), the court of criminal appeals considered whether a complaint that the trial court's questions and statements to a witness constituted an improper comment on the weight of the evidence[3] fell within either of these two categories of error and could be raised for the first time on appeal. The court noted the "question of error preservation turns not upon the 'circumstances under which [an error] was raised,' but upon the 'nature' of the error itself." *Id.* at 796 (quoting *Ex parte Heilman*, 456 S.W.3d 159, 166 (Tex. Crim. App. 2015)). Turning to whether a complaint the trial judge improperly commented on the weight of the evidence was a forfeitable right, the court stated our adversarial system "depends upon, or at the very least assumes, the decision-maker's impartiality." *Id.* at 799. The court concluded the "right to be tried in a proceeding devoid of improper judicial commentary is at least" a waivable-only right under *Marin*. *Id.* at 801. In light of *Proenza*, we will assume,

---

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979) ("In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.").

without deciding, that Gale was not required to object to the trial judge's questions in order to raise his complaint on appeal.

"In the Texas adversarial system, the judge is a neutral arbiter between advocates . . . he is not involved in the fray." *Brown v State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003). Due process requires a neutral and detached judge. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). A judge must not (1) have an actual bias against the defendant, (2) have an interest in the outcome of the case, or (3) assume the prosecutor's role. *Avilez v. State*, 333 S.W.3d 661, 673 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see also Luu v. State*, 440 S.W.3d 123, 128 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("A judge should not act as an advocate or adversary for any party.").[4] Generally, we will not find a due process violation absent a "clear showing of bias" by the trial judge. *Brumit*, 206 S.W.3d at 645.

A "neutral and detached" hearing officer is not synonymous with a silent observer. *Marshall v. State*, 297 S.W.2d 135, 136–37 (Tex. Crim. App. 1956). A trial judge is permitted to directly question a witness, including a defendant, when seeking information to clarify a point. *See Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. 1978); *Moreno v. State*, 900 S.W.2d 357, 359 (Tex. App.—Texarkana 1995, no pet.).[5] However, in doing so, the trial judge must not go beyond permissible questioning by (1) conveying his opinion of the case to the jury and ultimately influencing their decision, or (2) in the zeal of active participation, becoming an advocate in the adversarial process and losing the neutral and detached role required for the factfinder and the judge. *Moreno*, 900 S.W.2d at 359.[6] Because the trial in this case was to the

---

[4] *See also White v. State*, No. 05-17-00397-CR, 2018 WL 1940515, at *1 (Tex. App.—Dallas Apr. 25, 2018, pet. filed) (mem. op., not designated for publication).

[5] *See also White*, 2018 WL 1940515, at *3.

[6] *See also White*, 2018 WL 1940515, at *1.

–8–

bench, there was no danger of the trial judge's questions influencing a jury. Therefore, only the second consideration is implicated.

In a bench trial, the trial judge has more latitude than in a jury trial to question a witness to obtain information to assist in the fact-finding process. *See Moreno*, 900 S.W.2d at 359–60 (concluding that, in bench trial, trial judge may ask questions an advocate might ask in order to assist in fact-finding process); *see also Marshall*, 297 S.W.2d at 136–37 (concluding that, in bench trial, trial judge could question witness in order to obtain a clearer idea of merits of case).[7] Though not favored, even extensive and adversarial questioning by a trial judge is permissible in a bench trial as long as the questions are relevant to the issues before the court and the judge's impartiality is not affected. *See Guin v. State*, 209 S.W.3d 682, 686–87 (Tex. App.—Texarkana 2006, no pet.).[8]

Gale first contends the trial judge abandoned his neutral role by eliciting from Gale at the pretrial hearing "the damaging admission that [he] had confessed to the five [indecency] offenses." However, the trial judge did not ask Gale if he had committed the offenses. Rather, in the middle of discussing the status of the plea negotiations and the consequences of Gale refusing the State's offer, the trial court inquired whether it was true Gale had confessed to the indecency charges and then explained to Gale that, in light of the confessions, it might be difficult to prevail at trial. The trial court also asked the prosecutor whether the State would consider a plea bargain that did not include the attempted aggravated kidnapping charge. When Gale began to confess to the indecency offenses, the trial judge immediately interrupted and told him not to do so until he decided how he wanted to proceed with those cases. From the record as a whole, it is apparent the

---

[7] *See also White*, 2018 WL 1940515, at *3; *Jones v. State*, No. 05-07-00219-CR, 2008 WL 2440290, at *2 (Tex. App.—Dallas June 18, 2008, pet. ref'd) (not designated for publication) ("Nevertheless, in a nonjury trial, the trial judge may question a witness to clarify or obtain information about the facts of the case.").

[8] *See also White*, 2018 WL 1940515, at *3; *VanWinkle v. State*, No. 03-16-00278-CR, 2016 WL 3974650, at *5 (Tex. App.—Austin July 22, 2016, no pet.) (mem. op., not designated for publication).

trial judge's question was an attempt to explore whether Gale understood the potential consequences of refusing the State's plea offer and was not improper.

Gale also argues the trial judge abandoned his neutral role by asking Detective Clark to provide an opinion as to what Gale intended to do when he grabbed M.W. The only substantive issue at trial was whether Gale intended to kidnap M.W. At the time the trial judge asked Detective Clark for his opinion about Gale's intent, both M.W. and A.P. had testified Gale was trying to drag or take M.W. The trial judge had also seen the recording of Detective Clark's interview with Gale in which Gale stated he did not intend to take M.W, but only intended to kiss her on the cheek, and the video from the Salvation Army surveillance camera that showed the entire encounter lasted no more than fifteen seconds. The trial judge's question to Detective Clark, which was neutral on its face, was an attempt to clarify whether Gale's conduct constituted something other than an attempt to kidnap M.W. The trial judge also directed questions to A.P. and Gale on the same issue. On this record, we cannot conclude the trial judge's question to Detective Clark was improper.

The trial judge did not, through his questioning of Gale at the pretrial hearing or Detective Clark during the guilt phase of the trial on the attempted aggravated kidnapping offense, demonstrate bias against Gale or become an advocate for the State. The two complained-about questions do not reflect that the trial judge become so entangled in the role of an advocate that he lost his ability to remain neutral and detached. *See Brumit*, 206 S.W.3d at 645; *Moreno*, 900 S.W.2d at 359–60. We resolve Gale's first issue against him.

## Allocution

In his second and third issues, Gale contends he is entitled to a new punishment hearing because the trial court violated his statutory and common law rights to allocution.

*Relevant Facts*

Following the bench trial on March 20, 2017, the trial court found Gale guilty of attempted aggravated kidnapping, but ordered that Gale undergo a "full sex offender evaluation" before it assessed punishment on the attempted aggravated kidnapping offense and the five indecency offenses. The trial court then allowed the State to present the testimony of the punishment witnesses who were present at trial. On May 5, 2017, the trial court held a sentencing hearing at which it indicated it had reviewed both the sex offender evaluation report and the pre-sentence investigation report. Gale then presented punishment evidence pertaining to his request for community supervision.

At the end of the hearing, the trial court announced it was "going to set punishment" at ten years' confinement on three of the indecency offenses, was "going to" suspend those sentences and place Gale on community supervision, and the community supervision would begin once Gale was released from prison. On the remaining two indecency offenses and the attempted aggravated kidnapping charge, the trial court announced it was "setting punishment" at eight years' imprisonment and was "stacking" the sentences for the indecency offenses on the sentence for the attempted aggravated kidnapping offense. The trial court instructed Gale that the offenses were "non 3G" offenses and Gale would be eligible for parole after he had served two years. The trial court further advised Gale that, after he was released from prison, he would be on community supervision for ten years and would be required to attend sex offender counseling as a condition of community supervision. The trial court cautioned Gale of the consequences of violating the conditions of community supervision. The trial court advised Gale to be a "model citizen" in prison and to participate in any available programs. Finally, the trial court discussed with Gale the sex offender registration requirements.

On May 8, 2017, the trial court held another hearing at which it stated it had informed Gale at the May 5, 2017 hearing of what his sentences were on each of the offenses, but had failed to formally sentence Gale. The trial court asked Gale's counsel if there was "any reason in law" to prevent the trial court from sentencing Gale. Gale's counsel responded, "None in law, Your Honor." After stating it was the "order and judgment of this Court," the trial court then sentenced Gale on all the offenses. On June 2, 2017, Gale filed a motion for new trial in each case in which he complained he had been denied his statutory and common law rights of allocution.

*Analysis*

Allocution" refers to a trial court's inquiry as to whether a criminal defendant wishes to "speak in mitigation of the sentence to be imposed." *Eisen v. State*, 40 S.W.3d 628, 631–32 (Tex. App.—Waco 2001, pet. ref'd); *see also Allocution*, BLACK'S LAW DICTIONARY (10th ed. 2014). Article 42.07 of the code of criminal procedure, which implements a statutory right to allocution, requires the defendant be asked, before sentence is pronounced, "whether he has anything to say why the sentence should not be pronounced against him." TEX. CODE CRIM. PROC. ANN. art. 42.07 (West 2018). The circumstances where sentence cannot be pronounced are limited to when a defendant (1) has been pardoned, (2) is incompetent to stand trial, or (3) when a defendant escapes after conviction and before sentencing and another person is brought to sentencing who is not the defendant. *Id.* In addition to this statutory right to allocution, Gale contends he had a common law right to allocution.

Any right of allocution must be preserved by making a timely and specific objection in the trial court and obtaining a ruling. *McClintick v. State*, 508 S.W.2d 616, 618 (Tex. Crim. App. 1974) (op. on reh'g) (concluding appellant failed to preserve complaint trial court violated his right to "common law allocution" by failing to object in trial court prior to imposition of sentence); *Graham v. State*, 498 S.W.2d 197, 198 (Tex. Crim. App. 1973) (concluding appellant waived

complaint he was denied statutory right of allocation by failing to object in trial court); *see also* TEX. R. APP. P. 33.1(a)(1).[9]  The preservation requirement "ensures that trial courts are provided an opportunity to correct their own mistakes at the most convenient and appropriate time—when the mistakes are alleged to have been made."  *Hull v. State*, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002).

Gale did not object prior to sentencing that he had been denied any right to allocution.  *See Landers v. State*, 402 S.W.3d 252, 254 (Tex. Crim. App. 2013) ("An appellant fails to preserve error by failing to object when he had the opportunity[.]" (quoting *Rickels v. State*, 108 S.W.3d 900, 902 (Tex. Crim. App. 2003)).  Although Gale raised the complaint in his motion for new trial, "an appellant may raise a sentencing issue in a motion for new trial for the first time only if the appellant did not have the opportunity to object in the punishment hearing."  *Burt v. State*, 396 S.W.3d 574, 577 n.4 (Tex. Crim. App. 2013) (quoting *Hardeman v. State*, 1 S.W.3d 689, 690 (Tex. Crim. App. 1999)); *see also McClintick*, 508 S.W.2d at 618 (concluding appellant failed to preserve complaint he was denied common law right to allocution because "he did not raise this contention before the trial court prior to the imposition of sentence").  Prior to sentencing, Gale had the opportunity to object that the trial court had denied him any right to allocution.  Because Gale did not do so, he failed to preserve his complaints for our review.  We resolve Gale's second and third issues against him.

### Grossly Disproportionate Punishment

In his fourth issue, Gale complains the trial court erred by imposing grossly disproportionate sentences that violate the Eight Amendment's prohibition against cruel and unusual punishment.  While conceding that the offenses he committed "were undoubtedly of a

---

[9] *See also Cox v. State*, No. 05-17-00522-CR, 2018 WL 1149568, at *1 (Tex. App.—Dallas Mar. 5, 2018, no pet.) (mem. op., not designated for publication) ("It is well-settled that to complain on appeal of the denial of a right to allocution, whether statutory or one claimed under the common law, a defendant must timely object.").

serious nature," Gale argues the sentences were grossly disproportionate because he was "contending with some kind of serious and substantive mental issues" and the "most serious offense," the attempted aggravated kidnapping, occurred before the indecency offenses.[10]

The concept of proportionality is embodied in the Eighth Amendment's proscription against cruel and unusual punishment. U.S. CONST. amend. VIII; *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016).[11] However, this is a "narrow principle" that does not require strict proportionality between the crime and the sentence. *Simpson*, 488 S.W.3d at 322 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J. concurring)). Instead, it forbids only those extreme sentences that are so "grossly disproportionate" to the crime as to amount to cruel and unusual punishment. *Id.* (citing *Ewing v. California*, 538 U.S. 11, 23 (2003) (plurality op.)). A sentence is grossly disproportionate to the crime "only in the exceedingly rare or extreme case." *Id.* at 322–23.[12] Generally, punishment assessed within the statutory limits is not excessive, cruel, or unusual. *Id.* at 323.

To determine whether a sentence is grossly disproportionate to a particular defendant's crime, we first consider the severity of the sentence in light of the harm caused or threatened to the victim or victims, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses. *Id*. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, we then compare the defendant's sentence with the sentences of other offenders in Texas and with the sentences imposed for the same crime in other

---

[10] Gale preserved his complaint by filing, and presenting to the trial court, a motion for new trial as to punishment on the ground that his sentences constituted a grossly disproportionate punishment. *Williamson v. State*, 175 S.W.3d 522, 523–24 (Tex. App.—Texarkana 2005, no pet.) (concluding motion for new trial is appropriate way to preserve disproportionality claim for appellate review); *see also* TEX. R. APP. P. 21.6 (requiring motion for new trial to be presented to trial court within ten days of filing). The trial court did not hold a hearing on the motion for new trial, and it was deemed overruled by operation of law. *See* TEX. R. APP. P. 21.8(c).

[11] The Eighth Amendment is applicable to the States by virtue of the Fourteenth Amendment. *Harmelin v. Michigan*, 501 U.S. 957, 962 (1991).

[12] *See also Appleby v. State*, No. 05-17-00474-CR, 2017 WL 5897455, at *1 (Tex. App.—Dallas Nov. 30, 2017, no pet.) (mem. op., not designated for publication).

–14–

jurisdictions. *Id.* "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id.*

On the indecency offenses, the evidence showed Gale drove to areas by schools at times when he knew students would be walking to or from school and waited for girls who were walking alone or with one other person. Gale then got out of his car, naked from the waist down, and approached the girls while masturbating. All of the girls started screaming and crying when they saw Gale, and several of the victims testified as to how Gale's conduct had impacted their lives. There was also evidence that Gale had been charged with other misdemeanor offenses based on similar conduct in which his victims were adult women.

As to the attempted aggravated kidnapping offense, Gale drove to a road by a high school and saw M.W. walking alone. Gale parked his car, walked by M.W., turned, and grabbed her from behind around the shoulders. M.W. testified she felt Gale trying to drag her. She immediately fell to the ground and started screaming. A.P., who Gale had not noticed, began running toward Gale. Gale then released M.W. and fled in his car. M.W.'s mother testified about M.W. needing counseling after the incident, M.W.'s teachers driving her to and from school for the next two years, and the impact of the incident on M.W.'s family.

Having reviewed the record and considering the harm caused to Gale's victims, Gale's culpability, and his other misconduct, we cannot conclude this is one of those "rare" cases that leads to the inference that Gale's sentences were grossly disproportionate to the offenses. Further, Gale was convicted of five indecency with a child by exposure offenses, which are third-degree felonies, *see* TEX. PENAL CODE ANN. § 21.11(d), and one attempted aggravated kidnapping, which is a second degree felony, *see id.* §§ 15.01, 20.04(c). The sentence imposed for each offense fell within the statutory range of punishment for that offense. *Id.* at §§ 12.33, 12.34 (West 2011). We resolve Gale's fourth issue against him.

We affirm the trial court's judgments.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

170592F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

TYLER ANTONIO GALE, Appellant

No. 05-17-00592-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas,
Trial Court Cause No. F15-76789-N.
Opinion delivered by Justice Fillmore, Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 17th day of July, 2018.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TYLER ANTONIO GALE, Appellant

No. 05-17-00595-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas,
Trial Court Cause No. F15-76792-N.
Opinion delivered by Justice Fillmore,
Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 17th day of July, 2018.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TYLER ANTONIO GALE, Appellant

No. 05-17-00596-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas,
Trial Court Cause No. F15-76793-N.
Opinion delivered by Justice Fillmore,
Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 17th day of July, 2018.